## L. C. HARMON *vs.* JOHN E. HALE.

Where two or more persons have signed a promissory note jointly but nothing appearing in the note to show whether as principals or sureties, it is competent for one of the parties to show, by extrinsic evidence, that he executed the note as surety, simply, and that the payee had knowledge of the fact.

Such showing may be made in an action at law, especially under the practice adopted by our code.

If the payee forbear suing the principal, after being requested thereto in writing by the surety, as by section 582 of our code provided, such delay will operate to the discharge of the surety.

A verbal request to sue, on the part of the surety, is not sufficient. Fraudulent conduct on the part of the payee that lulls the surety into groundless confidence and prevents him from obtaining indemnity, is sufficient to discharge the surety.

The payee must act in good faith towards the surety.

Error to the Third Judicial District holding terms at Seattle.

*C. D. Emery* for plaintiff in error.

*McNaught & Leary* and *H. G. Struve* for defendant in error.

Opinion by LEWIS, Associate Justice.

This was a suit brought in the District court of the Third Judicial District on a promissory note, in the words and figures following, to wit:

"$800 currency.    SEATTLE, December 3d, 1872.

Three months after date, without grace, we promise to pay to the order of John E. Hale, at the Puget Sound Banking Company, Seattle, W. T., eight hundred dollars, U. S. currency, with interest thereon in like currency at the rate of two

per cent. per month from date until paid, said interest payable quarterly, and if not so paid to be added to the principal and bear the same rate of interest as the principal until paid.

Value received.

JOHNSTONE BROS,
L. C. HARMON."

The action was brought by the payee, John E. Hale, for a balance due upon the note, against the makers, Johnstone Bros. and L. C. Harmon, plaintiff in error.

Harmon filed his separate answer, setting up as a defense, that the note was made, executed and delivered to defendant in error, in consideration of a loan made at the date thereof to Johnstone Bros., and that Harmon signed the same as surety only, which *facts were at the time of the execution of the note,* and now are well known to said Hale.

That shortly after the maturity of the note, in March, 1873, he called upon Hale and informed him that he wished to be released from all liability upon the note, and requested him to proceed to collect the same; and he made a like request at two other times prior to April 15th, 1873.

That from the maturity of the note until July, 1873, Johnstone Bros. were carrying on business in Seattle as merchants, and at no time had in store less than $5000 worth of goods, subject to attachment and levy for payment of their debts.

That about the middle of July, Johnstone Bros. closed their store at Seattle and publicly removed their stock of goods to Tacoma, and continued business at the latter place until November, 1873, when they became insolvent.

That during the time they were in business at Tacoma, they were possessed of goods of the value of $5000, out which the said note was collectible.

That about the 15th of April, 1873, the said Hale, in answer to the demand of said Harmon to put the note in process of collection, he, Hale, stated to Harmon *that the said note was paid, and that he need not give himself any further trouble about it.*

That by reason of said statements of Hale, the plaintiff in error at all times supposed the note to be paid in full, and never knew or heard to the contrary, until the 25th December, 1873.

That said Johnstone Bros. have continued insolvent since November, 1873.

The defendant in error interposed his demurrer to this defense, the court below sustained the demurrer and the ruling of the District court on the demurrer is here assigned for error.

This case presents for our determination two questions :

1. Whether it is competent when two or more persons have signed a promissory note jointly, for one to show by parol evidence that he was surety for the other.

2. Whether the facts set up in the answer, as above stated, are sufficient to discharge Harmon, admitting that he signed the note as surety.

These are questions of much importance, especially the first one, and we have given them much consideration.

As to the first point it seems to be definitely settled that such evidence is admissible in equity, when this relation was known to the holder at the time of entering into the contract. (Parsons, Notes and Bills, 233.) Whatever will discharge a surety in equity, will discharge him at law, is also a well settled principle. 2 Am. L. cases, 3d edition, 293; 3 Comstock, 452.

It is insisted by counsel in opposition to the introduction of such evidence at law :

1. That he is estopped by his own admissions in the note.

2. That such evidence contradicts and varies his written contract.

These questions have not heretofore been adjudicated by this court, and there is some conflict in the authorities as to the points.

It is claimed, by counsel for defendant in error, that this question has been decided by the Supreme Court of the United States, in the case of *Spriggs vs. Bank of Mt. Pleasant*, 10 Peters, 257.

But an examination of that case will show that it was disposed of on a different point. The action was brought on a bond under seal, wherein the parties in *express terms* declared that they were bound as principals.

Thompson, J., in delivering the opinion of the court says :

"An estoppel has sometimes been quaintly defined the stopping of a man's mouth from speaking the truth, and would seem in some measure to partake of severity if not injustice.

"But it is in reality founded upon the soundest principles as a rule of evidence.

"It is a salutary and practical rule that a man shall not be permitted to deny what he has once solemnly acknowledged.  .

"In ordinary cases, where sureties sign an instrument without any designation of the character in which they become. bound, it may be reasonable to conclude that they understood that their liability was conditional and attached only in default of payment by the principal.

"Hence the reasonableness of the rule of law, which requires of the creditor that his conduct with respect to his debtor should be such as not to enlarge the liability of the surety, and make him responsible beyond what he understood he had bound himself.

"But when one, who is in reality only a surety, is willing to place himself in the situation of a principal by *expressly declaring*, upon his contract, that he binds himself as such, there cannot be any hardship in holding him to the character in which he assumes to place himself."

In this case, after an elaborate discussion of the question, the court says : "The fact of defendant's being a surety is not only not admitted, but it is alleged that he is estopped from setting it up by his own admission in his obligation that he is principal, and we are aware of no case giving countenance to such a defense, under such circumstances."

The Supreme court understood that case to turn upon the question of estoppel. The same case was again before them in a proceeding in equity. And in announcing the decision, the court says :

54

"That the decision turned upon the point that the defendant and all the other obligors had by *express terms* of the obligation *bound themselves as principals*, and were thereby estopped from setting themselves up as sureties, and in that case it was held such evidence was not admissible even in equity. *Spriggs vs. Bank of Mt. Pleasant*, 14 Peters, 201.

But the precise point in the case at bar has at no time been passed upon by the Supreme court of the United States.

A case precisely in point was before the Supreme court of Ohio.

"Whether the obligor is estopped by his bond from showing his relation as surety except when the instrument affords evidence of the fact ?"

And the court hold:

"That there is no attempt to deny or to evade the obligation of the bond. If the obligation recited that the obligors were principals there might be color for the assumption that the admission concludes them. In the absence of such recital we find nothing to stop them from proving the truth. *Bank of Steubenville vs. Hoge*, 6 Ham., 17; to the same effect, *Arthur vs. Douglas*, 5 Denio, 509.

In the case at bar, it is not in express terms stated that Harmon bound himself as principal, and in order that he be estopped from showing a fact, he must have made such admission in his contract, but not having so done in the note herein sued upon, he is not precluded from showing the fact of his being surety on the ground of estoppel. This view of the question is, we think, sustained by the authorities, and is correct in principle.

But is he prohibited from showing the fact of suretyship for the reason that such evidence will contradict or vary the contract ?

The proof of such fact does not in the first instance affect his liability, he is still jointly liable for the payment of the note. It only places him in the same position as if he had signed the note "as surety;" he is still absolutely liable on the note—

his obligation is not changed, and it only places him in such a position as to require of the holder of the note that he do nothing to his prejudice, and that he so use and enjoy his own property and rights as not to infringe upon the rights of others.

This question has been adjudicated in many of the State courts.

In the Supreme court of Massachusetts it is held that the fact that the party is surety and notice thereof to the holder of a note may be shown in an action at law, by extrinsic evidence, on the grounds that it does not affect the terms of the contract, but to prove a collateral fact and rebut a presumption. *Harris vs. Brooks*, 21 Pick., 195.

That where two or more have signed a note, not designated either as principal or surety, *prima facia*, both are principals, but the fact that one signed as surety may be proved by any competent evidence; it is not necessary that it should so appear by the contract. *Carpenter vs. King*, 9 Metcalf, 511; *Horne vs. Bodwell*, 6 Gray, 457.

In New York the Supreme court say that we cannot assent to the proposition that the fact of a man's being bound as surety could not be averred at law, and we in vain sought for the principle which allowed the inquiry in a court of equity, and not in a court of law; we understood the rules of evidence to be the same in both events. *King vs. Baldwin,* 17 Johns., 384.

It is so held in Alabama. (*Branch Bank vs. James*, 9 Ala., 949.) And the authors in Am. L. Cases, (vol. 2, 299), say that the true rule is laid down by the Supreme court of New Hampshire in the case of the *Grafton Bank vs. Kent*, (4 N. H., 221,) wherein the court said : "We are on the whole of opinion that the rule is that where the maker of a note, who has signed as surety, does not on the face of the paper appear to be a surety, he is considered and treated as a principal, with respect to all those who have *no notice of his real character*, but whenever it is material, a defendant may show by extrinsic evidence, that he made the note as surety only, and that it was known to the plaintiff that he was a surety only."

The same point has been so decided in Missouri. *Grant vs. Ferguson*, 9 Mo., 125.

It·hath been said by a distignuished English chancellor that the common law courts, even in England, have fallen ·in love with the doctrines of equity on questions arising out of the contract of suretyship.

The writer is of opinion that in the United States, courts of law have not only·fallen· in love with the doctrines,·but have actually embraced them.

.That great law writer, Judge Parsons, hath declared that, in his opinion, the weight of authority and principle. is in favor of the admission of such evidence in courts of law. 1 Parsons on Notes and Bills, 234.

In announcing an opinion on a question as to the admissibility of parol evidence upon a case involving, in principle, the point under discussion, Chief Justice Marshall said :

"That it was competent to show, by parol, that payment of a note by verbal agreement was to be demanded at a particular bank."

That such evidence does not contradict the instrument, the place of demand not being expressed on the face of the note. *Brents Exts. vs. Bank*, 1 Peters, 89.

A similar principle·is announced by the Supreme court of the United States in *Ford vs. Williams*, (21 H., 287,) wherein Ford was permitted to show by parol that, although the contract in writing was made with one Bell, that Bell was in fact acting as·his agent. This proof, say the court, does not contradict the writing, but explains the transaction.

But further, under the provisions of our statute, (code 1873, section 582) it is enacted: "That any person bound as surety upon any contract for the payment of money, when the right of action has accrued, may require, by notice in writing, the creditor to forthwith institute an action."

Now, was it intended that the surety be driven into a court of equity to first determine the fact that he is a surety, it not appearing on the face of the note, before he could exercise the

rights given him by statute, or was it not rather the intent of
the legislature, if he was in fact surety, to permit him to so de-
clare to the holder, and by written notice, require him to pro-
ceed to collect the demand, and that he so do at his peril.   We
think the latter the more reasonable.

Again, by the provisions of section 584, when action is
brought upon such contract, and one of the defendants is in
fact surety, he may cause the question to be tried upon the
issues of the parties on the trial, as afterward, thereby giving
to the surety the right to show such fact in action at law.

Taking into consideration the fact that the great weight of
authority is in favor of the admission of such evidence and that
the rule is reasonable, as also the fact that we have a code prac-
tice in this Territory, which tends, in a great measure, to break
down all distinctions between the forms of proceedings at law
and in equity; we are of opinion that the fact that Harmon
is in fact a surety upon such note, may be shown in this proceed-
ing at law.

That the correct rule is that in an action at law, on a prom-
issory note executed by two or more, *not designating* whether
the parties have signed either as principal or surety, *prima
facie*, both are principals; but it is competent for one of the
parties to show, by extrinsic evidence, that he signed the note
as surety only, and that plaintiff had knowledge of that fact.

It being admitted that Harmon in fact signed the note as
surety, and that Hale had notice thereof at the time, are the
facts set up sufficient to discharge him?

In support of this proposition, the plaintiff in error insists
upon two grounds that he is discharged :

1.   A forbearance to sue on verbal request, whereby he was
injured.

2.   The assurance by Hale that the claim was paid, by rea-
son of which he took no steps to secure himself.

As to the first point we are of opinion that the allegations
are insufficient.   A mere forbearance to sue upon a verbal re-
quest furnishes no grounds for a discharge.   Our statute has

fixed and determined that matter by the provisions of section 582, of the code above cited, such request *must be in writing*. This statute affords to the surety full and complete protection, and if there be any delay in the prosecution of the claim, the surety has no reason to complain, for the surety is not required to go to the holder with a voice of entreaty, and endeavor to persuade him to sue, but he may approach him and *command* that he sue at once, and if he refuses, or neglect to so do, the surety will be discharged.

As to the second point, the general rule is this: Any fraudulent or deceitful conduct on the part of the creditor, which lulls the surety into groundless confidence, and prevents him from obtaining indemnity, will operate as a discharge. 1 Parsons on Notes and Bills, 242.

In the case at bar Hale expressly stated to Harmon that the note was paid, and at that time, and long afterward, Johnstone Bros. were able to pay the same, and had ample means from which the same could have been made by suit. By his conduct Harmon was deceived and took no steps to indemnify himself; he had a right to believe the note was paid on the assurance of Hale, the facts set up bring the case within the general rule.

But further, it has been held by legal authority that if a creditor informs the surety that the note is paid, and the *surety thereby* lose an *opportunity to secure himself*, and the note was not, in fact, paid, the surety is discharged. *Baker vs. Briggs*, 8 Pick., 122; *Harris vs. Brooks*, 21 Pick., 195.

The authorities collected in 2 American Leading Cases, fully sustain the above, and the exposition of the law, as therein contained, is correct in principle.

The holder of the note has the right to look to the surety for payment. By his contract he is bound equally with the principal, but the law requires that he act toward the surety with the utmost good faith; if he do this, the surety will in no case be discharged, but if he attempt to deceive him; if he by false representations induce him to believe the note is paid, when in fact it is not, and the surety thereby lose opportunity to

secure himself, it is but just, that in such case, the surety be discharged and the holder cannot complain, for such result is brought about by his own wrongful act.

The demurrer should have been overruled. The judgment of the court below is reversed and the cause remanded.