[No. 31501.   Department Two.   January 12, 1951.]

F. PEPLINSKI, *Appellant*, v. S. W. CAMPBELL *et al.*,

*Respondents.*[1]

[1]Reported in 226 P. (2d) 211.

*Hennessey & Curran,* for appellant.

*Del Cary Smith* and *Robertson & Smith,* for respondents.

GRADY, J.—This action was brought to secure a decree declaring a real-estate contract to have been rescinded and awarding judgment for the amount of the initial payment of purchase price. After a trial before the court, a judgment was entered dismissing the action.

The appellant desired to purchase property which he might improve and resell. His father and brothers were carpenters, idle at the time because of a strike. Their services were available if such property could be secured promptly. Appellant contacted respondent Campbell, a real-estate agent, and informed him of his desire. Campbell represented respondent B. L. Lewis, who was administrator of the estate of Maud Lewis, his mother. Lewis and the other heirs of Maud Lewis, claimed to be the owners of a tract of farm land upon which were buildings in need of substantial repairs. Campbell showed the property to appellant. It met his desires, and on May 2, 1949, a written contract of sale and purchase was executed. The part of the contract out of which this litigation arose reads as follows:

"Seller shall furnish to purchaser, as soon as reasonably possible, a policy of title insurance certified to date hereof,

showing title such as any actually operating title insurance company will insure, and purchaser shall be allowed 10 days for examination thereof and completion of his part of this agreement. A good and sufficient deed executed by seller, title papers now held by seller, and insurance policy in not less than the unpaid balance of the purchase price, with loss payable to seller as his interests may appear, with premiums thereon to be paid by purchaser, shall be deposited in escrow in ........................................., Spokane, Washington, to be delivered to purchaser upon full payment of the purchase price. . . .

"If this agreement is not accepted by the seller within the time above stated, or if the seller cannot show title as agreed above, all money is to be returned on demand and surrender of abstract or title policy to seller, and this agreement shall be at an end unless the seller elects to perfect such title within a reasonable time."

A title report of a title insurance company was furnished by respondents. The report stated that a policy of title insurance would be issued, subject to a number of exceptions against which it would not insure. The exceptions consisted of the taxes for the year 1949 and an unsatisfied mortgage in the sum of eighteen hundred dollars. It was also stated in the title report that Maud Lewis acquired title to the property by virtue of a deed from her husband, W. J. Lewis, dated April 20, 1928, but not filed for record until June 14, 1935; that on January 18, 1930, W. J. Lewis filed a declaration of homestead upon the property, and on June 14, 1935, Maud Lewis, a widow, also filed a declaration of homestead thereon. The insurance company drew the conclusion that the deed was not delivered until after the death of W. J. Lewis and might not be binding upon his heirs. It further appeared from the records that a part of the property had been included in the inventory of the estates of William S. Ogilbee and Marion D. Ogilbee, deceased; also that on December 16, 1937, Maud Lewis had filed a petition in the estates setting forth that she was the owner of the property, but no further proceedings had been taken. The insurance company stated it would not insure against the rights of the heirs of the Ogilbees as to any

interest they might have in the property. The title report further stated that the estate of Maud Lewis, deceased, was in the course of administration, and if a sale of the real estate was to be made it should be done through regular sale proceedings after the filing of proper inventory and appraisement of the estate.

When appellant received the title report, his attorneys informed respondent Lewis by letter to the effect that his agent had understood appellant intended to improve the property and resell it in the shortest possible time, and had promised that a title report showing an unencumbered title would be furnished within three days from the execution of the contract to purchase. Enclosed with the letter was a copy of the title report. The letter stated that appellant withdrew his offer to purchase, tendered back the contract, and demanded return of the purchase money paid. On July 26, 1949, appellant commenced this action. The answer of respondents alleged that all defects in the title were cured and that they stood ready to deliver marketable title. At the trial, which was started November 7, 1949, respondents presented a title insurance policy. The policy insured the title against all of the matters and things pointed out in the title report, except the taxes and the mortgage. The trial court decided that the letter written by the attorneys for appellant had the effect of directing respondents that they should not proceed further in their efforts to obtain a marketable title to the property.

We are not in accord with the interpretation given by the trial court to the letter from appellant, or with its conclusion that appellant was estopped thereby to seek a termination of the contract and a return of the purchase money paid. When the appellant was informed of the condition of the title by the title report and the position taken by the title insurance company as to its insurability, he had to decide whether to perform the contract or terminate it. If he chose the latter course it was subject to the right of respondents to perfect the title. The contract gave respondents a reasonable time within which to perfect the

title so that it would be insurable. They recognized this was their right and acted accordingly.

In *Kessinger v. Anderson,* 31 Wn. (2d) 157, 196 P. (2d) 289, we discussed the doctrine of equitable estoppel, cited our leading cases and reviewed authorities on the subject. We pointed out equitable estoppel, or estoppel *in pais,* rests upon the principle that when a person by his acts causes another to change his condition to his detriment, the person performing such acts is precluded from asserting a right which he otherwise might have had. We made reference to the three things which must occur to constitute an estoppel *in pais*: (1) An admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.

Appellant did no act which caused respondents to do anything to their detriment or do anything which they otherwise would not have done. It was the desire of respondents to convey the property to appellant with an insurable title, and when it developed the title was not insurable they proceeded to have it cleared of defects. It was necessary that this be done before respondents could enforce performance of the contract by appellant. We therefore conclude that appellant was not estopped to assert the rights given to him by the contract.

We shall assume, without deciding, that respondents ultimately so perfected the title to the property that it had become insurable as contemplated by the contract. We are of the opinion, however, that the title was not perfected within a reasonable time. What is a reasonable time is not capable of any precise definition. The circumstances of each case must govern. The appellant desired to purchase property so that he could recondition and improve it in such a way as to make it readily salable. He had available means for the execution of his plan. It was highly important that the title to the property be either insurable or be capable

of being put in that condition within a short time in order that he might resell. The title report showing the condition of the title was made May 3, 1949. The policy of title insurance was not made available until November 7, 1949. We conclude that under the circumstances the respondents did not perfect the title within the reasonable time contemplated by the contract.

The judgment is reversed, and the cause remanded for the entry of a decree canceling the contract and a money judgment for the amount of the purchase money paid with interest at the legal rate and the costs and disbursements of the action.

SCHWELLENBACH, C. J., ROBINSON, MALLERY, and HILL, JJ., concur.

