WILLIAM E. NEAL et al., *Respondents*, v. RODERICK GREEN
et al., *Appellants*.*

*Jeremiah M. McCormick* and *Orvin H. Messegee*, for appellants.

*Bogle, Gates, Dobrin, Wakefield & Long* and *Orlo B. Kellogg*, for respondents.

LANGENBACH, J. †—The following facts were found by the trial court. Respondents, Mr. and Mrs. Neal, owned two parcels of land in Yakima County. One parcel, referred to as the motel property, was composed of two contiguous tracts. The other parcel, referred to as the Danker property, was situated a few miles away. In September, 1957, respondents and the appellants Lind signed a real estate contract whereby respondents were to sell the motel prop-

*Reported in 426 P.2d 485.

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

erty to appellants. Through a mistake, there was included in the real estate contract a description of the Danker property, which property was not intended to be sold by respondents. Appellants took possession of the motel property but did not take possession of the Danker property. Respondents, through Dankers, remained in possession of the Danker property, paying taxes on it, until May, 1958, when they contracted to sell it to Mr. and Mrs. Danker. The Dankers have ever since been in possession of it. They declared a homestead in 1960.

In 1962, acting under the same mistake as that under which the real estate contract of September, 1957, had been made, and using a copy of the same mistaken description, respondents signed and acknowledged a fulfillment deed. They did not deliver it.

A portion of the motel property had been condemned for highway purposes after appellants had entered possession. A controversy arose between appellants and respondents over the disposition of the price paid by the state for the condemned part of the motel property. The Superior Court for Yakima County ordered that respondents be paid a portion of that price equal to the unpaid balance of the purchase price under the real estate contract of September, 1957, with interest, in exchange for a fulfillment deed containing a description which was identical to that stated in the real estate contract. No issue was raised, litigated or decided between the parties to that proceeding as to whether there had been a mistake in the description contained in the real estate contract. At that time, the mistake had not been discovered. Neither was it discovered when the fulfillment deed was accordingly delivered to appellants.

In October, 1963, appellants purportedly made a gift of the Danker property to a daughter and son-in-law by quitclaim deed for which no consideration was paid. These grantees, the Greens, were upon notice of the rights of the respondents and of the Dankers who had given notice by

recording the declaration of homestead. In November, 1963, the Greens demanded possession of the Danker property.

Respondents sued in Yakima County for reformation of the real estate contract and fulfillment deed by deleting therefrom references to the Danker property. Venue was changed to King County for convenience of the witnesses. Having made its findings of fact, the trial court granted reformation and quieted title to the Danker property in respondents, subject to the rights of the Dankers. Appellants' counterclaims were dismissed with prejudice.

■ Appellants challenge the trial court's findings of fact which established that the Danker property was included in the real estate contract and fulfillment deed by mutual mistake. In *Slater v. Murphy*, 55 Wn.2d 892, 896, 898, 339 P.2d 457 (1959), we said:

> The evidence to justify the reformation of a deed on the ground of mutual mistake must be clear, cogent, and convincing. [Citing cases.]
>
> . . . .
>
> ". . . Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a *mere* preponderance of evidence, but only upon a certainty of the error. . . ."

The question is whether the mistake upon which the reformation of the contract and deed was based is "established by such clear, cogent, and convincing evidence that we can say that the trial judge or any reasonable man should have been convinced thereby." *Slater v. Murphy, supra,* at 898.

There was conflict in the testimony. But this does not mean that the court must deny reformation. " 'Certainty of the error' is not the equivalent of 'uncontradicted testimony of error.' " *Jones v. National Bank of Commerce,* 66 Wn.2d 341, 345, 402 P.2d 673 (1965). Mr. Lind, his son and daughter testified that to induce appellants to purchase the motel property, respondents, during negotiations, agreed to throw in the Danker property. (The trial court stated at the hearing on motion for judgment notwithstanding court's decision that on the crucial issue it did not believe

the testimony of Mr. Lind.) Neals testified that they did not intend to include a description of the Danker property and that such description was included by mistake. Mr. Neal explained that the descriptions in the real estate contract had been based on tax statements which he had handed to an employee of the title company. He had meant to turn over only the statements regarding the motel property but had inadvertently given a statement regarding the Danker property as well. When he later saw the real estate contract, he thought the separation of the description into tracts A and B reflected the fact that the motel property was composed of two contiguous tracts. In fact, however, one of those described tracts was the Danker property.

Faced with a conflict of testimony and having in mind the standard of proof applicable here (a standard mentioned by the court four times in its five page oral opinion), the trial court examined the conduct of the parties. It pointed out that the earnest money agreement did not refer to the Danker property and that there was no evidence that such property was ever referred to in discussions with the title company employee who prepared the agreement. It pointed out that the title company wrote to another title company concerning this transaction and made no reference to the Danker property. It also noted that the Linds never took possession of the Danker property whereas the Neals were paying taxes and receiving rents on the property up to 1958 when they sold it to the Dankers who were thereafter in possession of and paying taxes on it. The court concluded that:

> It is the opinion of the court that the conduct of the parties subsequent to the morning of September 3, 1957 is consistent with the testimony of the Neals and inconsistent with the testimony of the Linds to such an extent that the court is of the opinion that the evidence is clear, cogent and convincing that the mistake was made when Mr. Neal gave to Mr. Johnson in the office of the Everett Abstract and Title Company on September 3, 1957, the tax receipt describing the Danker property. This was a mistake, unconsciously done, and in the opinion of the court was probably not discovered by anyone

until after the Linds sold the balance of the motel property.

The trial judge had before him the conflicting testimony of the witnesses, the demeanor of the witnesses, corroboration (or lack of it) from contemporary records and evidence of the parties' subsequent conduct. He resolved this mass of data into a finding that the Danker property had been included in the contract and deed by mutual mistake. Our examination discloses that clear, cogent and convincing evidence supports that finding.

The appellants' second defense read:

Due to the conduct of plaintiffs and/or agents, in connection with the property in dispute herein, the plaintiffs are estopped from denying the correctness and validity of both the Contract of Sale, dated September 17, 1957, and the Deed dated March 29, 1962.

Appellants sought to introduce a copy of Neals' petition in the Yakima County suit described above. Respondents objected, saying:

My objection to it is this, Your Honor, that it is immaterial under the issues in this case, that the only reason I really make the point is this, because in his opening statement here this morning counsel said that he was going to rely upon this document and the Order which was entered on this Petition as res judicata. . . . I now object to the admissibility of this because its admissibility would only go to the point of res judicata, and I do not believe that res judicata is sufficiently pleaded to have put me on notice. As a matter of fact, it never occurred to me that anybody would claim to me there was res judicata. THE COURT: Is that the purpose of this exhibit? MR. MESSEGEE [counsel for appellant]: No, Your Honor. THE COURT: Objection overruled. MR. McCORMICK [counsel for appellant]: I didn't say anything about res judicata. We were talking about judicial estoppel or collateral estoppel, and, as the cases point out, it is not the same thing.

Appellants then offered the order entered on the petition and it was admitted over respondents' objection that "it can have no relevancy except upon the ground that this issue is adjudged and I happen to call that res judicata and he

wants to split hairs by saying it is estoppel." Later, appellants offered three other documents pertaining to the earlier proceeding in Yakima County, all of which were admitted over similar objections by respondents. Appellants asserted that the three documents were evidence of estoppel, *viz.*, "That the conduct of these plaintiffs in the litigation in Yakima County amounted to what is sometimes in the books called judicial estoppel and sometimes called collateral estoppel."

Appellants then went on to say:

> I think for the record it should be shown that we do now move parenthetically, I will say, not conceding that it is necessary or not knowing at this juncture whether it is necessary, but we do now move to amend the pleadings of the affirmative defense to conform to the proof of the Plaintiffs to the evidence that has been introduced by the Plaintiffs themselves. . . .[1] [W]e feel that our pleading of estoppel under the present rules of pleading is sufficient to encompass this type of a collateral estoppel, even though it weren't pleaded, and even though the motion to amend the pleadings weren't granted, but we see no reason why such an amendment shouldn't be granted to clear the record.

The court, after recess, held that the motion to amend the pleadings "to set up an affirmative defense to the issue of estoppel by judgment or res judicata" was denied. It then stated that if that denial be error it was denying

> the pleading of estoppel by judgment or res judicata for the reason that the issues decided and before the court in Yakima, in the Yakima case, were not concerned with the property in question here, with the issue whether or not the Danker property was a part of the contract sought now to be reformed, and therefore the judgment entered in the Yakima case will not act as an estoppel on that issue, . . . .

■ Appellants assigned error to the trial court's denial of their motion to amend their pleadings to conform to the proof and to the court's conclusion that respondents were not estopped from seeking reformation. They also assigned

---

[1]Appellants are referring to testimony by respondents and counsel regarding the prior litigation in Yakima County.

error to the court's finding that "no issue was raised, litigated or decided between the parties to that [Yakima County] proceeding as to whether there had been a mistake in the description contained in such 'real estate contract.'" The doctrine of collateral estoppel did not bar respondents from seeking reformation of the contract and deed. At the time the Yakima County order was entered, neither party knew or argued that the Danker property was improperly included in the original contract of sale. The only question considered by the Yakima court was the disposition of the funds received from the condemnation of a part of the motel property. The matter of mistaken description was not litigated in the prior action. Therefore, that form of res judicata called collateral estoppel did not conclude litigation of the issue of mistake in the subsequent suit involving the same parties brought on a different claim for relief.

The Yakima court ordered that respondents be paid a portion of the condemnation proceeds equal to the unpaid balance of the purchase price under the real estate contract in exchange for a fulfillment deed. That deed was to contain a description of the property as described in the real estate contract (which contract, as we have seen, mistakenly included the description of the Danker property). The order recited that the deed should be executed in the form "attached at Exhibit 'A'." Exhibit "A" contained a Xerox copy of the description which had been attached to the real estate contract. The trial court reformed that contract for mistake. It was therefore necessary that it also reform the deed, which the Yakima court had required, to conform to the description in such contract, as reformed.

We have examined appellants' other assignments of error, including the argument that respondents are estopped by their own negligence from seeking reformation and have found them without merit. The judgment is affirmed.

FINLEY, C. J., HILL, ROSELLINI, and HUNTER, JJ., concur.