[No. 39103.    En Banc.    November 26, 1969.]

GEORGE LEONARD, *Appellant,* v. WASHINGTON EMPLOYERS, INC., *Respondent.*\*

*Williams, Lanza, Kastner & Gibbs* and *Robert H. Lorentzen,* for appellant.

*Lane, Powell, Moss & Miller, Pendleton Miller, John Lackland,* and *Thomas S. Zilly,* for respondent.

HAMILTON, J.—Appellant, George Leonard, is a former employee of respondent Washington Employers, Inc. On

\*Reported in 461 P.2d 538.

December 31, 1963, he voluntarily terminated his employment with respondent. At the time of termination appellant believed and asserted that he had a vested interest in respondent's voluntary, contributory employee pension plan to which he had contributed since July, 1961. Respondent disputed this, contending that appellant did not qualify under the terms of the formal pension plan from the standpoint of the number of years of "credited service" required for the vesting of pension rights. Appellant initiated this action seeking an adjudication of his rights. After trial to the court sitting without a jury, the trial court entered findings of fact, conclusions of law, and judgment dismissing appellant's claim for relief. This appeal followed.

■ Appellant makes 16 assignments of error, 9 of which are directed to findings of fact entered by the trial court. Insofar as the findings of fact to which error is assigned arise out of conflicting evidence, we have examined the statement of facts and find such findings to be supported by substantial evidence. Other of the findings of fact are predicated upon undisputed evidence. Under these circumstances we will not disturb the trial court's findings. *Watson v. Yasunaga*, 73 Wn.2d 325, 438 P.2d 607 (1968); *Sheldon v. Hallis*, 72 Wn.2d 993, 435 P.2d 988 (1967).

The remainder of appellant's assignments of error as does his argument on appeal revolves about three issues, (a) the admission of certain testimony, (b) the trial court's refusal to order reformation of the formal written pension plan, and (c) the trial court's refusal to apply the doctrine of estoppel. We will set out briefly the background facts necessary to a disposition of these issues.

Respondent is an employers' association which assists its members in their labor relations. Appellant had been employed by respondent, and its immediate predecessor, since January 1, 1943. In the years immediately prior to the termination of his employment in 1963, appellant had been vice-president of the respondent corporation with duties which on occasion required him to work with unions, employees, and pension consultants on the formulation, drafting and establishment of pension plans. He was accordingly

familiar with the procedures followed in pension plan development and adoption.

In the mid-1950's respondent, through its executive committee, with the assistance of a firm of pension consultants, began studying the feasibility of establishing a pension plan for its 15 office employees, among whom was appellant. Intermittent discussions were carried on with the consultants into 1961.

In February, 1961, the consultants sent a letter to the president of respondent briefly outlining several plans. Suggested provisions common to all plans were:

> Credited Past Service is equal to completed whole years of service rendered by an employee prior to the effective date of the plan and subsequent to the completion of two years of service.

and

> *Vesting* An employee will have a 100% vested interest in the plan on completion of 15 years of service and attainment of age 55.

Appellant was asked for his comments on the proposals, and in a memorandum to the president of respondent proposed, among other things, that vesting come about after 15 years of service and age 55 or after 20 years of service regardless of age. This alternative was passed on to the consultants.

On May 18, 1961, respondent's executive committee met and requested the consultants to prepare a "spreadsheet" to facilitate comparison of the various plans. The spreadsheet was prepared and incorporated appellant's suggestion with respect to all proposed plans. On May 24, 1961, apparently with no more before it than the spreadsheet and explanatory letters from the consultants, the executive committee passed a resolution approving one of the plans to be effective as of July 1, 1961.

In July, copies of an outline of the approved plan, prepared by the consultants, were given to the employees concerned, including appellant. The outline, so far as pertinent, contained the following:

ELIGIBILITY

You will be eligible to join the Plan on the Effective Date provided that you have then completed two years of continuous service. If you have not completed two years of service on the Effective Date you will be eligible to participate in the Plan on the first of the month following the completion of two years of service provided that you have not yet then attained the age of 55.

. . .

*Past Service Benefits*—For each whole year of service in excess of two that you may have rendered prior to July 1, 1961, you will receive one year of Credited Past Service. . . .

. . .

TERMINATION OF SERVICE

If your service is terminated other than by death or retirement after you have attained the age of 55 and completed fifteen years of service or after twenty years of service regardless of age, you will receive, provided you do not withdraw your own contributions, either:

(a) the total retirement income earned to your termination date by both Washington Employers and your own contributions with payments starting on your Normal Retirement Date, or,

(b) a smaller retirement income than provided under (a) with payments starting on the first day of any month after your 55th birthday.

In lieu of this retirement income or if you do not have the required number of years to qualify for it, you will receive the total amount of your contributions to the Plan together with compound interest at the rate of 2½% per annum.

. . .

This descriptive material is for the purpose of outlining the more important features of the Plan. The actual Plan is subject to the terms and conditions of the formal Plan and Trust instrument.

Accompanying the outline was an enrollment card, to be filled in and signed by employees wishing to participate in the plan. This card among other provisions contained an agreement whereby the employee undertook to be bound by all the terms and provisions of respondent's retirement

plan. Appellant executed the enrollment card and payroll deductions representing his contributions to the plan commenced July 1, 1961.

In October, 1961, the first draft of the formal written plan was forwarded to respondent's president. On November 17, 1961, the executive committee met again and adopted the formal draft as respondent's retirement plan, to be effective as of July 1, 1961. The plan as adopted provided in pertinent part:

CREDITED SERVICE means the total of Credited Past Service and Credited Future Service. Credited Service will exclude any period of service prior to or during which an Employee was eligible to participate in the Plan and did not participate therein.

. . .

An Employee of the Company will be eligible to participate in this Plan on the Effective Date provided the Employee has then completed two years of continuous service. An Employee who does not have two years of continuous service or new employees will be eligible to participate in the Plan on the first day of the month coinciding with or immediately following the completion of two years of service provided they have not then attained the age of 55.

. . .

For each year of Credited Past Service a Participant will receive a monthly benefit . . . Credited Past Service is years of service with the Company or with Washington Metal Trades, Inc. in excess of two years that a Participant may have rendered prior to July 1, 1961.

. . .

*Termination of Service After Attainment of Age 55 and the Completion of Fifteen Years of Credited Service Under the Plan or Completion of Twenty Years of Service Regardless of Age:*

If a Participant terminates his service after attainment of age 55 and the completion of fifteen years of Credited Service under the Plan or after twenty years of Credited Service under the Plan regardless of age, he may elect either of the following options:

Copies of the plan as finally adopted were distributed to respondent's employees. Appellant, however, disclaims re-

ceiving a copy, although he concedes that a copy was available for his scrutiny at any time. As can be observed the variation in language between the outline of the plan and the final formal plan, so far as pertinent to this cause, lies in the use of the phrase "years of Credited Service" in the termination provisions of the final plan as opposed to the use of the phrase "years of service" in the same provisions of the outline.

During the latter part of 1963, appellant commenced negotiations with another firm about going to work for the other firm. In October, 1963, appellant, being concerned about his rights under the retirement plan, consulted the outline which he had received in 1961. He concluded from this outline that, based upon his years of service with respondent, his rights under the plan had vested. Although appellant was knowledgeable in the pension plan field, he did not consult the formal final document even though he knew one had been executed and adopted and was available to him. Neither did he ask anyone about his rights nor did anyone make any representations to him concerning his rights.

As a result of his conclusions concerning his rights under the plan, appellant reached an agreement with the other firm to enter its employ. He notified respondent's president, and it was agreed he would terminate his employment with respondent as of December 31, 1963. After these events, and about the middle of December, appellant was informed by respondent's president that he did not qualify for vested rights in the retirement plan, except to the extent of the return of his contributions with interest. This was so, according to respondent, because appellant, although having been employed by respondent for 21 years, did not have 20 years of credited service since the first 2 years of his employment could not be counted. Appellant testified he would not have left respondent's employ or would have made different arrangements had he not believed that his rights in the retirement program were vested. Nevertheless, appellant did leave respondent's employment on De-

cember 31st, and on that date wrote respondent's president a letter urging that a mistake had been made in the drafting of the formal document embodying respondent's retirement plan, and that the alternative vesting provision should be "twenty years of service" rather than "twenty years of credited service." Appellant requested that the final plan document be corrected accordingly. Respondent's executive committee, after corresponding with the pension consulting firm, rejected appellant's contention that a mistake had been made. Appellant thereupon initiated this lawsuit.

The trial court, in dismissing appellant's claim, among other things, found as a fact that appellant knew when he signed his enrollment card in July, 1961, that the proposed retirement plan had not been finalized. Furthermore, the trial court determined from the evidence that no mutual understanding as to the meaning of the phrase "twenty years of service" as used in the outline had been reached between the parties in 1961. From these findings the trial court concluded that appellant had failed to sustain his burden of proof on the issue of mutual mistake and accordingly denied reformation. The trial court then found and determined that respondent had not misled, deceived or made any misrepresentation to appellant concerning the vesting of his rights under the plan, and that appellant was careless in relying upon the outline rather than consulting the formal document or making inquiries with respect to his rights before he voluntarily left respondent's employ in 1963. The trial court thereupon determined that respondent was not estopped from asserting appellant's ineligibility under the final plan as adopted. As we have heretofore indicated, the trial court's findings of fact are supported by substantial evidence, and they in turn sustain the trial court's conclusions.

Appellant assigns error to the admission into evidence and consideration by the trial court of the testimony of respondent's president concerning his understanding of the term "years of service" as it was used in the discussions

and documents leading up to the formulation and adoption of the retirement plan in its final form. In this vein, respondent's president testified, both on direct and cross-examination, that the phrase at all stages of development of the plan contemplated that years of creditable service would be the yardstick by which vesting of rights would be measured. Appellant contends that such testimony violates the parol evidence rule and is irrelevant because it is evidence of subjective intent rather than a manifestation of objective intent.

We find no merit in either premise.

■■ In the first place, the parol evidence rule is not applicable in actions for reformation. *Akers v. Sinclair*, 37 Wn.2d 693, 226 P.2d 225 (1950); *Nadreau v. Meyerotto*, 35 Wn.2d 740, 215 P.2d 681 (1950). The reason is clear. The remedy of reformation is granted when necessary to conform a writing to correctly reflect the agreement actually reached by the parties. *Thorsteinson v. Waters*, 65 Wn.2d 739, 399 P.2d 510 (1965); *Tenco, Inc. v. Manning*, 59 Wn.2d 479, 368 P.2d 372 (1962); *McKelvie v. Hackney*, 58 Wn.2d 23, 360 P.2d 746 (1961). In order to determine whether there was a mutual understanding which preceded the writing, and if so, what the mutual understanding was, parol must be admitted before a court can pass upon the question of whether the writing should be reformed.

In the second place, although we adhere to the objective manifestation theory,[1] the trial court admitted the challenged evidence in order to compare understandings of the term "years of service" as between appellant and respondent's president and executive committee. From this comparison the trial court was able to ascertain whether there had in fact been a mutual understanding as to the precise meaning of the term before the formal and final written plan was adopted. This evidence was admissible for that purpose. *Cf. Akers v. Sinclair, supra.*

Appellant next contends that the trial court erred in

---

[1]*See Janzen v. Phillips,* 73 Wn.2d 174, 437 P.2d 189 (1968), and *Plumbing Shop, Inc. v. Pitts,* 67 Wn.2d 514, 408 P.2d 382 (1965).

refusing to reform the formal plan document to read "years of service" rather than "years of credited service." He asserts that the variation is due to mistake.

■ One seeking reformation of an instrument must prove, by clear, cogent and convincing evidence, (1) both parties to the instrument had an identical intention as to the terms to be embodied in a proposed written document, (2) that the writing which was executed is materially at variance with that identical intention, and (3) innocent third parties will not be unfairly affected by reformation of the writing to express that identical intention. *Neal v. Green,* 71 Wn.2d 40, 426 P.2d 485 (1967); *Kincaid v. Baker,* 66 Wn.2d 550, 403 P.2d 888 (1965); *Jones v. National Bank of Commerce,* 66 Wn.2d 341, 402 P.2d 673 (1965); *Thorsteinson v. Waters, supra; Akers v. Sinclair, supra.*

The trial court determined that appellant had failed to sustain his burden of proof in connection with his requested reformation. In short, the trial court found that the parties did not have an identical intention as to the nature of the service years necessary to qualify for vested rights under the retirement plan prior to the formulation and adoption of the final document. This finding necessitated a weighing and evaluation of the testimony of the witnesses, a function peculiarly within the province of the trial court. In reaching this determination the trial court specifically attributed credit to the testimony of respondent's president. We cannot say from the printed record that the trial court was in error in this regard. The trial court's determination, supported as it is by competent and substantial evidence, must stand. *Kincaid v. Baker, supra.*

Appellant finally contends the trial court erred in refusing to hold that respondent was estopped from denying that appellant had vested rights in the pension or retirement plan. In this respect, appellant argues that the 1961 outline of the retirement plan contained a representation concerning "twenty years of service," and that he was entitled to rely upon this representation in 1963 despite the intervening adoption of the final formal plan.

■ Recently, we had occasion to review the doctrine of equitable estoppel. In *Arnold v. Melani,* 75 Wn.2d 143, 437 P.2d 908, 449 P.2d 800, 450 P.2d 815 (1968-69), we said, at 147:

> Equitable estoppel, estoppel in pais, *Peplinski v. Campbell,* 37 Wn.2d 857, 226 P.2d 211 (1951); estoppel by conduct, *State v. Northwest Magnesite Co.,* 28 Wn.2d 1, 182 P.2d 643 (1947); estoppel by misrepresentation, *Kessinger v. Anderson,* 31 Wn.2d 157, 196 P.2d 289 (1948); *James v. Christ Church Parish,* 29 Wn.2d 103, 185 P.2d 984 (1947), are titles given to an equitable doctrine which in general subscribes to the principle that a man shall not be permitted to deny what he has once solemnly acknowledged, *Harmon v. Hale,* 1 Wash. Terr. 422 (1874), and is more specifically defined as requiring three elements: (1) An admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.

The listed elements are necessary to establish an equitable estoppel. But they are not necessarily alone sufficient. Not all those who rely upon another's conduct or statements may raise an estoppel. Rather, it is only those who have a *right to rely* upon such acts or representations. *Kessinger v. Anderson,* 31 Wn.2d 157, 196 P.2d 289 (1948); *Bennett v. Grays Harbor County,* 15 Wn.2d 331, 130 P.2d 1041 (1942). This qualification is sometimes expressed in a different manner. In *Wechner v. Dorchester,* 83 Wash. 118, 145 P. 197 (1915), we stated it thusly, at 122:

> In order to create an estoppel it is necessary that:
>
> "The party claiming to have been influenced by the conduct or declarations of another to his injury, was himself not only destitute of knowledge of the state of facts, but was also destitute of any convenient and available means of acquiring such knowledge; and that where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel." 11 Am. & Eng. Ency. Law (2d ed.), p. 434.

*See also Geoghegan v. Dever,* 30 Wn.2d 877, 194 P.2d 397

(1948), and *Waldrip v. Olympia Oyster Co.*, 40 Wn.2d 469, 244 P.2d 273 (1952).

The essence of both statements of the qualification is that, absent fraud or misrepresentation, estoppel runs in favor only of those who have reasonably relied on another's conduct or declarations. *Weitman v. Grange Ins. Ass'n,* 59 Wn.2d 748, 370 P.2d 587 (1962).

In the instant case, respondent made no representations to appellant in 1963 concerning his pension rights, other than to tell him that his rights had not vested. The 1961 outline contained a warning that the terms of the plan would be embodied in a formal document. Appellant knew, when he signed his enrollment card in July, 1961, that a formal and finalized retirement plan was to be approved and adopted later that year and he was fully aware of the fact that such a document was actually executed. A copy of it was available to him at all times between the date of its adoption and his election to depart respondent's employ. Nevertheless, despite this knowledge and his knowledgeability in the pension plan field, appellant looked only to the outline when he was evaluating his pension status in 1963. This course of conduct cannot be characterized as such reasonable reliance upon another's conduct or declarations as would support an equitable estoppel. The trial court did not, therefore, err in denying appellant's claim in this regard. *Cf. Gallo v. Howard Stores Corp.*, 145 F. Supp. 909 (E.D. Pa. 1956), *aff'd,* 250 F.2d 37 (3d Cir. 1957).

The judgment is affirmed.

HILL, FINLEY, WEAVER, NEILL, and McGOVERN, JJ., concur.

HUNTER, C. J. (dissenting)—I dissent. From my examination of the record I am satisfied that a binding contract came into existence between the respondent and its employees under the outline of July 6th at the time the employees signed the enrollment card.

The record shows that on May 24, 1961, the executive committee for the respondent met and adopted a retirement plan which was to become effective July 1, 1961. The plan

adopted, designated as plan 5, contained, *as did all five of the proposed plans,* the following vesting provision:

100% vested interest with 15 yrs of service & attainment of age 55 or 20 yrs' service regardless of age.

On or about July 6, 1961, the respondent's employees were given a 5-page document outlining the essential features of the retirement plan. That outline expressed virtually the same vesting provisions as set out above. It read as follows:

TERMINATION OF SERVICE

If your service is terminated other than by death or retirement *after you have attained the age of 55 and completed fifteen years of service or after twenty years of service regardless of age, you will receive,*  . . .

(Italics mine.)

The respondent, however, points out that the final paragraph of the 5-page outline terminated as follows:

This descriptive material is for the purpose of outlining the more important features of the Plan. The actual Plan is subject to the terms and conditions of the formal Plan and Trust instrument.

Nevertheless, the employees were instructed to accept or reject the offer *at that time* by either signing the attached enrollment card or the employee waiver and release. In addition, immediate salary deductions were withdrawn from the wages of those employees who did accept the offer by enrolling. At that time the employees were thereby forced to either join the plan and commence making contributions or waive their rights to ever join it. The waiver and release card provided:

It is understood that no other retirement plan will be made available to me through my employer. All rights and privileges to which I would have been entitled under the Washington Employers, Inc. Retirement Plan are hereby waived and Washington Employers, Inc. is released from any and all liability with respect to me under said Retirement Plan.

On or about July 10, 1961, the appellant George Leonard completed and returned the enrollment card and com-

menced immediate contribution toward the retirement plan from his salary.

I am satisfied that at this point a contract between the appellant and the respondent came into existence. In *Fuller v. Ostruske*, 48 Wn.2d 802, 807, 296 P.2d 996 (1956), this court stated:

If the terms of a contract are agreed upon and the intention of the parties is plain, then a contract exists, even though one or both of the parties may have contemplated that a more formal contract would be executed subsequently. *Loewi v. Long*, 76 Wash. 480, 136 Pac. 673; *Washington Dehydrated Food Co. v. Triton Co.*, 151 Wash. 613, 276 Pac. 562.

The subsequent, formalized plan drafted and adopted by the respondent changed the time of vesting from "years of service" to "years of credited service." This constituted a substantive change of the contract by unilateral act, contrary to the manifest intent of the parties. As this court recently stated in *Plumbing Shop, Inc. v. Pitts*, 67 Wn.2d 514, 517, 408 P.2d 382 (1965), Washington follows the objective manifestation theory in construing alleged contracts:

The Washington court has long adhered to the objective manifestation theory in construing the words and acts of alleged contractual parties. We impute to a person an intention corresponding to the reasonable meaning of his words and acts. Unexpressed intentions are nugatory when the problem is to ascertain the legal relations, if any, between two parties. *Washington Shoe Mfg. Co. v. Duke*, 126 Wash. 510, 218 Pac. 232, 37 A.L.R. 611 (1923).

The objective manifestation of the retirement plan *placed before the employees in July* can be found only in the outline, irrespective of the more "formal" November draft.

The respondent contends that the July outline, by calling for a formal plan, contemplated material changes to the contract. I cannot agree. Such an interpretation would create an illusory contract, allowing the respondent to make material changes at its wish or whim. The objective intent of the contracting parties was expressed by the July outline, upon which the employees were told to either accept

or reject, and not by the language *unilaterally* supplied at a much later date by the respondent when it drafted the formal plan. Any other interpretation would be construing the pension plan, as drawn up by the employer, in favor of the employer and against the employee. A pension plan may not be so construed. As the court said in *Frietzsche v. First Western Bank & Trust Co.*, 168 Cal. App. 2d 705, 707, 336 P.2d 589 (1959):

> Pension plans are to be liberally construed in favor of the employee. (*Klench v. Board of Pension Fund Commrs.* (1926), 79 Cal.App. 171, 186 [249 P. 46].)
>
> The general rule is that pension plans, formulated by an employer, are construed most strongly against the employer. (*Sigman v. Rudolph Wurlitzer Co.* (1937), 57 Ohio App. 4 [11 N.E.2d 878, 879].)

I would therefore reverse.

ROSELLINI and HALE, JJ., concur with HUNTER, C. J.

---

March 3, 1970. Petition for rehearing denied.