[No. 39096.    Department Two.    December 29, 1967.]

ESTHER GEORGE SHELDON, *Respondent*, v. JOHN HALLIS *et al.*, *Appellants.**

*Robert G. Perlman*, for appellants.

*Sanchez & Martin*, by *Bruce G. Martin*, for respondent.

LANGENBACH, J.†—The plaintiff-respondent and her sister are Port Madison Indians. Respondent owned a tract of real property in Kitsap County which she desired to sell. Her own property had been properly cleared for sale by the United States Indian Agency which had supervisory powers over the lands of the Indians. Adjacent to and adjoining respondent's own property was an "L" shaped piece of property. Part of this, to the west, was owned by her sister, and the remainder, to the south, had not been released from restrictions by the Indian Agency. Respondent, unwittingly, placed this entire property for sale with a real-estate broker who exhibited the property to the defendants-

*Reported in 435 P.2d 988.

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

appellants. The husband examined a map made of a survey of the property, visited the ground itself, saw the survey stakes and concluded he would buy this particular parcel of real property.

The price of $25,000 was satisfactory to him. The broker prepared an earnest money agreement, now an exhibit, which described the premises as a whole and made a particular reference to this survey map. Appellants agreed to buy the property which was described on this survey map.

Application was made for a title insurance policy covering the property to be bought and sold. At that time it was discovered that respondent did not own the entire tract of property.

The parties themselves, with the assistance of the real-estate broker, attempted to remedy the situation. They concluded jointly that the respondent should convey outright by a deed the property which she owned free of any restrictions for a cash consideration of $15,000. This money was paid and the deed was delivered. Nothing further remained to be done concerning that part of the transaction.

In order to insure that appellants would obtain the remainder of this particular piece of property, the parties prepared a printed form of agreement, usual in such transactions, which described the "L" shaped parcel of land to the best of their ability and assigned to it the balance of the original purchase price of $10,000, $1,000 of which was then paid to respondent. While this particular piece of property might not, of itself, have been worth the named consideration, it seemed agreeable and reasonable inasmuch as the entire property was worth at least the original consideration of $25,000. No question has been raised pertaining to this phase of the entire transaction.

This new contract of sale for the remaining property provided that the balance was payable upon delivery of marketable title and respondent was allowed 2 years in which to perfect title to this property. It also provided for the payment of interest at the rate of 3.5 per cent per annum and in case suit was brought thereon for reason-

able attorney's fees. The question of when appellants might get possession thereunder was uncertain and it might be delayed until title was perfected.

Appellant husband was a dealer in real estate, presumed to be in full possession of his faculties and he readily entered into this arrangment. In this regard, in its oral decision, the trial court stated:

Now, a great deal has been made of the inadequacy of the description in that real estate contract, but I want to say that if anyone is at fault, they are all at fault. Mr. Hallis didn't have to sign that contract. He was under no coercion or compulsion to sign it. And he did sign it with full knowledge of what the contract contained, both as to description and as to interest, and some other unusual terms, including a clause which provided that he would pay attorney fees in event of default, . . . .

Respondent then made application to the Bureau of Indian Affairs to sell the balance of her property and proceeded to procure title from her sister to the tract to the west. Prior to 1965, she succeeded in getting the restrictions removed and obtained a deed to her sister's property. She had a deed prepared and submitted it to appellants.

About this time appellants refused to proceed with the transaction claiming there had been an improper description in respondent's deed. The trial court stated further:

And the buyer at this point reneged for some reason, claiming that this was an improper description. But rather than ask for reformation of the contract so that the description would satisfy him, he chose to ask for rescission. And, as I say, it is my feeling that he was just as guilty as Mrs. Sheldon was in employing this admittedly poor description.

Thereupon this action was commenced seeking specific performance of the contract of purchase, recovery of the balance of the purchase price including agreed interest and attorney's fees.

Appellants answered and cross-complained for rescission of the real estate contract. The case was set for trial February 14, 1966. On January 28, appellants deposited in the registry of the court the balance of $9,000. On the same

date appellants tendered a deed with a corrected legal description to respondent who executed it and tendered it back to appellants on the morning of the trial. At that time appellants amended the prayer of their cross-complaint with an alternative pleading for reformation, which amendment the court allowed.

At the conclusion of the trial, the court announced an extensive oral opinion in favor of respondent. In it was allowed the balance due, accrued interest and attorney's fees. After entry of findings of fact, conclusions of law and a judgment conforming to the oral decision, the appeal was timely taken.

There are five assignments of error. The trial court erred: (1) In entering the controversy as respondent made no showing that she had no plain, speedy or adequate remedy at law. (This assignment is meaningless and without merit.) (2) Entering judgment for interest and attorney's fees where the parties did not agree upon the description of the property to be conveyed. (3) Entering judgment for interest and attorney's fees arising out of contract where no tender of deed was made prior to commencement of trial. (4) Entering finding of fact No. 2 and conclusion of law No. 2 in that such finding is not in accordance with the evidence and the court's memorandum decision. (5) Entering findings of fact Nos. 7, 10 and 13 as such findings were not in accordance with the evidence.

The first three assignments of error were argued together. Appellants asserted "[t]he action of specific performance is not a matter of right" and "the Respondent must come into such an action with clean hands."

An action for specific performance is a proceeding in equity. The respondent averred the execution of the contract, her compliance with its terms, the procurement of title to the property in question as specifically provided for in the contract, the tender of a deed and the failure of appellants to abide by their agreement. When the deed she tendered was disapproved by appellants, their own attorney presented a form of deed which she executed and

tendered back to appellants. Prior to trial appellants had deposited the balance of the purchase price in the registry of the court. At first appellants sought rescission and later reformation. During the trial no evidence was presented on either of these claims.

In *Tombari v. Griepp*, 55 Wn.2d 771, 775, 350 P.2d 452 (1960), the court stated: "However, according to the overwhelming weight of authority, a vendor, as well as a vendee, may obtain specific performance of a contract for the sale of land." The evidence clearly showed that the property now in question may not have been worth the purchase price assigned to it alone. But, the appellants candidly admitted that they had sold the *entire* property for $30,000 cash, a balance of which was being withheld pending the outcome of this litigation. Moreover, any fault in employing the defective description in the contract was equally attributable to appellants as to respondent. Consequently, appellants were not in a position legally or equitably to insist upon either reformation or rescission. There is no merit in these assignments of error.

Assignments four and five referred to certain findings of fact. These findings have been scrutinized and examined in the light of the facts disclosed in the statement of facts. The trial court saw and heard the various witnesses and the parties; it could well appraise and determine the weight and credibility of the testimony and proof. There was substantial evidence which sustained the findings of the trial court. They will not be disturbed.

In *Stringfellow v. Stringfellow*, 56 Wn.2d 957, 959, 350 P.2d 1003, 353 P.2d 671 (1960), the court stated the following rule:

Factual disputes are to be resolved by the trial court. The Washington constitution, by Art. IV, § 6, vests that power exclusively in the trial court. The power of this court is appellate only, which does not include a retrial here but is limited to ascertaining whether the findings are supported by substantial evidence or not. If we were so disposed, but we are not, we are not authorized to substitute our judgment for that of the trial court. (Citing cases.)

Accord: *Ormiston v. Boast,* 68 Wn.2d 548, 413 P.2d 969 (1966).

Conclusion of law No. 2 merely stated: "That reformation of the real estate description in the contract of sale was not necessary." The trial court aptly observed that the husband was a mature white man with some experience in real estate. He saw the map (survey), he visited the premises, saw the stakes set therein and was actively engaged in the preparation of the real-estate contract and the description of the land inserted in it. He had sold the entire property involved in this transaction before the title to a part of it had been perfected and the deed procured. This sale was at a substantial profit to appellants. There is no error in the record and the judgment must be and is hereby affirmed.

FINLEY, C. J., DONWORTH and HAMILTON, JJ., concur.

NEILL, J., concurs in the result.