ROBERT A. DAILY AND ANN P. DAILY, JOSEPH M. DAVIS AND KAY H. DAVIS, AND ROBERT W. WYNDELTS AND ELLEN R. WILLIS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 20425–80.     Filed August 29, 1983.

*Donald O'Neil Heck,* for the petitioners.
*Stephen J. Waller,* for the respondent.

FAY, *Judge:* Respondent determined deficiencies in petitioners' 1976 Federal income tax as follows:

| Petitioners | Deficiency |
|---|---|
| Robert A. Daily and Ann P. Daily | $5,939 |
| Joseph M. Davis and Kay H. Davis | 285 |
| Robert W. Wyndelts and Ellen R. Willis | 779 |

After concessions, the issue is whether in 1976 petitioners' partnership sustained an abandonment loss on certain real property.

### FINDINGS OF FACT

Some of the facts are stipulated and are found accordingly.

All petitioners resided in Arizona when they filed their joint petition herein.

At all relevant times, petitioners were among a group of partners in Uptown Apartment Co., a general partnership engaged in the rental property business in Arizona. Pursuant to a land sales contract dated November 26, 1974,[1] the

---

[1] In contrast to a mortgage or trust deed, in a land sales contract the seller retains title to the property until the buyer makes all required payments.

partnership purchased three apartment buildings located on three separate parcels of real property for a total purchase price of $150,000. That price consisted of $6,800 cash, $142,000 in monthly principal payments, and the assumption of real property taxes in the amount of $1,200. Under the terms of the contract, the sellers had the right in the event of the partnership's default in payment either to bring an action for specific performance or to declare a forfeiture of the partnership's interest.

In 1976, the partnership determined that the cost of maintaining and operating one of the apartment buildings (herein the 5th Avenue property) exceeded the rental income derived therefrom.[2] Consequently, after failing in its attempt to sell the 5th Avenue property, the partnership engaged in several actions intended to effect an abandonment of that property. Accordingly, the partnership evicted tenants, shut off utilities, terminated insurance coverage, stopped maintenance work, nailed shut apartment doors, and ceased payments under the land sales contract. These actions were taken only with respect to the 5th Avenue property; no similar actions were taken on the other two apartment buildings.[3] In December 1976, the partnership attempted to forfeit its interest in all three apartment buildings by offering the sellers a "Deed of Voluntary Forfeiture," but the sellers rejected that offer. In March 1977, however, the sellers declared a forfeiture of the partnership's interest in all three apartment buildings pursuant to a "Notice of Election and Declaration of Forfeiture," and the forfeiture became effective 10 days thereafter.

On its 1976 return, the partnership claimed an abandonment loss with respect to the 5th Avenue property in the amount of $38,061, its adjusted basis in the property. Petitioners deducted their distributive share of this loss. In his notice

---

[2]Although the purchase price was not allocated between the three parcels of real property, the parties have stipulated herein that the 5th Avenue property had a fair market value of $45,000 on the date of purchase.

[3]Since the partnership was "breaking even" on the other two apartment buildings, it continued to operate them throughout 1976 even though by failing to make payments under the land sales contract, the buyers were technically in default with respect to those properties also. As of Dec. 31, 1976, the unpaid balance due under the land sales contract was $137,625.33.

of deficiency, respondent determined that the partnership was not entitled to an abandonment loss in 1976.

OPINION

The issue is whether in 1976 the partnership sustained a deductible loss with respect to the 5th Avenue property.[4] Petitioners argue the partnership abandoned the 5th Avenue property and is therefore entitled to an ordinary loss deduction in 1976. In essence, petitioner's position is that the abandonment in 1976 and the forfeiture in 1977 constitute separate taxable events.[5] Respondent contends that since the buyers were personally liable for the payments due under the land sales contract, the partnership's attempt to abandon the 5th Avenue property was ineffective. He argues any tax consequences resulting from the economic failure of the transaction must be determined at the time of the later forfeiture. For the following reasons, we hold for respondent.

In *Middleton v. Commissioner*, 77 T.C. 310 (1981), affd. 693 F.2d 124 (11th Cir. 1982), this Court held that a partnership sustained a deductible loss upon its abandonment of investment property which was subject to a nonrecourse mortgage. However, citing *Commissioner v. Green*, 126 F.2d 70 (3d Cir. 1942), we noted therein that a different result might be required when property is subject to recourse debt. *Middleton v. Commissioner, supra* at 323.

In *Commissioner v. Green, supra,* the Third Circuit Court of Appeals held that an attempt to abandon property subject to recourse debt does not result in a deductible loss because—

---

[4]In the event we find there is a deductible loss in 1976, there is no disagreement over the character or amount of that loss. The parties agree the amount of such loss would be $38,061, the adjusted basis, and that since the property constituted trade or business property under sec. 1231, I.R.C. 1954, any loss would constitute ordinary loss even if the abandonment is deemed to be a sale or exchange. See *Middleton v. Commissioner*, 77 T.C. 310, 320 (1981), affd. 693 F.2d 124 (11th Cir. 1982), where this Court found a deemed sale or exchange upon the abandonment of property subject to nonrecourse debt. Inasmuch as the property in *Middleton* was raw land held for investment, it constituted a capital asset, the loss of which gave rise to a capital loss.

[5]Petitioners' analysis is as follows: after taking an ordinary loss deduction in 1976 (see note 4 *supra*), the partnership's adjusted basis would be zero. The partnership would then recognize a capital gain in 1977, subject to applicable recapture provisions, to the extent it is relieved of liability as a result of the forfeiture. See *Commissioner v. Tufts*, 461 U.S. ___ (1983); *Crane v. Commissioner*, 331 U.S. 1 (1947). Essentially, petitioners are claiming an ordinary loss deduction in 1976 in return for capital gain in 1977.

the property continues until foreclosure sale to have some value which, when determined by the sale, bears directly upon the extent of [the taxpayer's] liability for a deficiency judgment. [*Commissioner v. Green, supra* at 72.]

Petitioners accurately point out that the instant case is distinguishable from *Green* in that the sellers herein could not have obtained a deficiency judgment against the buyers. Their only remedies in the event of default in payment were either to bring an action for specific performance or to declare a forfeiture of the buyers' interest in the 5th Avenue property, neither of which will subject a defaulting party to a deficiency judgment.[6] Petitioners conclude, therefore, that the instant case is controlled by *Middleton*, not by the analysis set forth in *Green*. While we agree the analysis in *Green* is not directly on point, we find the instant case is also distinguishable from *Middleton* and that it cannot be decided simply on the basis of whether a deficiency judgment may or may not be obtained against the partnership.

*Middleton* involved a nonrecourse mortgage transaction wherein the sellers' only remedy in the event of default was to foreclose on the property. In contrast, the sellers in the instant case had the right to bring an action for specific performance. Thus, throughout 1976 the possibility existed that the sellers would force the partnership to acquire clear title to the 5th Avenue property despite the partnership's efforts to abandon it.[7] In the event of such enforcement, the 5th Avenue property would clearly have substantial value to the partnership when all payments under the contract were completed and retrieval would be inevitable.[8] The regulations provide that in the case

---

[6]Under Arizona law, the terms of a land sales contract can limit the partners' remedies. See *Treadway v. Western Cotton Oil & Ginning Co.*, 40 Ariz. 125, 10 P.2d 371 (1932). Under the terms of the land sales contract herein, the sellers' only remedies were either to bring an action for specific performance or to enforce a forfeiture.

[7]Indeed, the fact that the sellers rejected the buyers' attempts in 1976 to forfeit their interest in the 5th Avenue property and the other two apartment buildings suggests that the sellers were contemplating the possibility of instituting an action for specific performance. Moreover, under Arizona law, as under the common law generally, sellers of real property may prevail in actions for specific performance. *Golder v. Crain*, 7 Ariz. App. 207, 437 P.2d 959 (1968); *Steward v. Sirrine*, 34 Ariz. 49, 267 P. 598 (1928); *Security Bank of Oregon v. Leathers*, 247 Or. 79, 427 P.2d 409 (1967); *Sheldon v. Hallis*, 72 Wash. 2d 993, 435 P.2d 988 (1967).

[8]Although the fair market value of the 5th Avenue property was less than the amount of

of either raw land or depreciable buildings, in order to qualify for the recognition of loss from physical abandonment, the intent of the taxpayer must be to discard the asset either irrevocably or permanently so that it will neither be used again by him nor retrieved by him for sale, exchange, or other disposition. Secs. 1.165–2(a) and 1.167(a)-8(a)(4), Income Tax Regs. Since the partnership could have been forced to specifically perform on the contract and thereby reacquire the property, we cannot conclude that the partnership irrevocably discarded the 5th Avenue property in 1976. Therefore, any loss suffered by the partnership was not evidenced by a closed and completed transaction until 1977 when the forfeiture occurred. Accordingly, the partnership is not entitled to a deduction for any loss in 1976. Sec. 1.165–1(b) and (d), Income Tax Regs.

To reflect concessions and the foregoing,

*Decision will be entered under Rule 155.*

---

the payments owed thereon under the land sale contract, thus making it "worthless" to the partnership, clearly the 5th Avenue property would have substantial value to the partnership when such debt was paid off.