EGON J. MAKKAY and ELFRIEDE L. MAKKAY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Makkay v. Commissioner
Docket No. 25455-81.
United States Tax Court
T.C. Memo 1984-16; 1984 Tax Ct. Memo LEXIS 656; 47 T.C.M. (CCH) 869; T.C.M. (RIA) 84016; January 10, 1984. James V. Tamburro, for the petitioners. Alfred A. Pierri, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency of $2,481 in petitioners' 1979 Federal income tax. By his answer, respondent asserted an additional deficiency of $840 in petitioners' 1979 Federal income taxes and also asserted that petitioners are liable for an addition to tax under section 6653(a)[1] in the amount of $166. The *658 issues for decision are as follows: (1) Whether petitioners are entitled to a charitable contribution deduction for amounts allegedly paid to the Freedom Church of Revelation; (2) whether petitioners are entitled to charitable contribution deductions for transfers allegedly made to an "entity" described as local congregation No. 00320; (3) whether petitioners are liable for an addition to tax under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of fact, together with the exhibits attached thereto, are incorporated herein by this reference. [2]
Egon J. (hereinafter "petitioner") and Elfriede L. Makkay, husband *659 and wife, (hereinafter collectively referred to as "petitioners") resided at Allentown, New Jersey, at the time the petition was filed in this case. They timely filed a joint Federal income tax return for their 1979 taxable year with the Internal Revenue Service Center at Holtsville, New York. During 1979, petitioner was employed by a company called RCA/C&CS, and earned wages of $24,083.45 from such employment. During that same year, petitioners earned additional income from a business called Central Art and Engineering. This business was owned by petitioners, conducted out of their home and involved the making of signs and displays. Petitioners' residence was located at 219 Doghill Road, Allentown, New Jersey (hereinafter the "Doghill Road address"), during 1979. At some time in 1979, petitioner became involved with the Freedom Church of Revelation [3] (hereinafter "FCR"). During November 1979, petitioner received a document labeled as a "certificate of ordination" from FCR which purported to render him a "minister" of FCR. Following his "ordination," petitioner received another document labeled as a "charter" which purported to establish a local congregation of FCR at *660 petitioners' residence which was at that time located at the Doghill Road address. This "local congregation" was described as local congregation No. 00320 and will hereinafter be referred to as such. *661 In order to become a "minister" of FCR, an individual must attend a meeting, make an application and be "accepted" prior to becoming "ordained." Additionally, a "donation" of 10 percent of the individual's prior year's gross income is normally required to be made to FCR at the time a person applies to become a "minister." On December 6, 1979, petitioner purchased a treasurer's check in the amount of $3,000 payable to FCR and transferred it to Mr. Jerome Heinemann, a "bishop" of FCR. Both prior to and after becoming an "ordained minister" of FCR, petitioner attended numerous seminars conducted by Freedom College, an organization operated by FCR. An enrollment reservation form from one Freedom College seminar described the topics to be discussed at the seminar as follows: 0 Issue Grants!
0 reduce Your Tax Obligation
0 Estate Planning!
Approximately 70% to 100% This Year
0 School Funding Tuition
and Each Year Thereafter!
0 Make Tax-Free Purchases!
0 make Money, Food and Property
0 Congregational Investments
Donations to Needy Situations!
Without Capitol [sic] Gain!
0 congregational Investments for 100%
Within the Next 24 Months!
The primary *662 function of these seminars was to instruct "students" on how membership in FCR could be utilized to minimize Federal taxes. [4]
At least a portion of petitioner's $3,000 payment to FCR was used to pay costs associated with Freedom College's conduct of its seminars. Petitioner would not have made this $3,000 payment to FCR absent the "education" provided by the seminar. [5] Petitioners claimed this $3,000 payment as a charitable contribution deduction on their 1979 Federal income tax return. *663 Local congregations of FCR in general, and petitioner's local congregation No. 00320 in particular, were controlled and "managed" by the local congregation's board of trustees. The boards of trustees of the local congregations therefore exercise complete control over any expenditures made by local congregations of "donated" funds, and FCR does not generally concern itself with expenditures of funds by the local congregations. Thus, as applicable during the years in issue, the articles of association of FCR provided in pertinent part as follows: 6. The Local Churches.The local churches or congregations of the Church are chartered by the presiding Bishop who may revoke such charters for good cause shown. Each local church is headed by a minister, who is trustee and corporate sole thereof, and each local church shall be an autonomous religious body under the spiritual authority of the church. Each local church shall have sole control over its property real and personal, pursuant to the general oversight of the staff and these articles. * * * [Emphasis supplied.] A booklet published by FCR, setting forth its basic beliefs and organizational structure, provided in pertinent *664 part: THE ESTABLISHMENT AND FINANCIAL MAINTENANCE OF A LOCAL FAMILY CONGREGATION Freedom Church of Revelation charters local Family Congregations.
Each local Congregation has one or more ministers, licensed, commissioned and ordained by investiture (public oath) to manage each Congregation with a Board of Trustees. Each local Congregation is maintained by voluntary contributions. Ministers… as Trustees… pay all congregational expenses, except food and servants, according to Parsonage Allowance, 26 U.S.C. § 107. (See I.R.S. Publication 525) Since a Church consists of people, and since two or more people constitute a Congregation of a church, Ministers of local Congregations should support themselves by outside secular employment and donate up to 50% of their adjusted gross income to the local Congregations until such time as the local Congregation can expand to such an extent that the Minister can devote full time to the services of the Congregation. At some time late in 1979, petitioner, his wife Elfriede, and his long-time friend, Marje Napershi, were established as the board of trustees of local congregation No. 00320. On their 1979 return, *665 petitioners claimed a total charitable contribution deduction of $12,000 for property allegedly transferred to local congregation No. 00320. The following property, and the respective values placed thereon by petitioners, (without the benefit of independent appraisal), constituted the property allegedly contributed by petitioners to local congregation No. 00320: Vertical Milling Machine and accessories
$5,500
Toolmakers Lathe and accessories
3,500
Air Compressor and accessories
500
Floor Drill Press and accessories
600
Oxy-Acetylene Welding Outfit
400
Electric Spotwelding Machine
500
Disc Sander
300
2 Pedestal Toolgrinders
450
Radial Arm Saw
250
Total
$12,000
All of the above property was used by petitioners in their sign-making business, Central Art and Engineering. This property was never physically transferred from petitioners' garage, which was the situs of Central Art and Engineering. Moreover, even after the alleged transfer of this property, it remained subject to petitioners' dominion and control.
On their 1979 Federal tax return, petitioners claimed the total alleged value of the above-referenced equipment as a charitable *666 contribution deduction. Thus, petitioners claimed on their 1979 return total charitable contributions of $15,000 as amounts allegedly transferred to FCR ($3,000) and local congregation No. 00320 ($12,000). In addition to the $15,000 claimed as charitable contributions to FCR and local congregation No. 00320, petitioners claimed a $312 cash charitable contribution. The recipient of this contribution is not disclosed in the record. Thus, on Schedule A of their 1979 Federal income tax return, petitioners claimed that they made total charitable contributions of $15,312. Their claimed charitable contribution deduction was limited to 50 percent of petitioners' gross income, or $13,502. In his statutory notice of deficiency, respondent disallowed all but $3,000 of petitioners' claimed charitable contribution deduction and determined a deficiency in petitioners' 1979 Federal income tax of $2,481. In his answer to the petition in this case, respondent disallowed the $3,000 claimed by petitioners as charitable contributions on their 1979 return which was not disallowed in the statutory notice Thus, respondent asserted an increased deficiency of $804 in his answer, and further asserted *667 an addition to tax under section 6653(a) in the amount of $166. OPINION Petitioners contend that their claimed deduction for the payment to FCR ($3,000) and alleged transfers of property to congregation No. 00320 ($12,000) are allowable as charitable contributions under section 170. Respondent admits that petitioner transferred $3,000 to FCR, but argues that this transfer did not constitute a deductible expenditure either because FCR, the transferee, was not a qualified organization under section 170(c)(2)(B), or because the transfer itself did not constitute a "charitable contribution." With respect to the $12,000 worth of property which petitioners allegedly transferred to local congregation No. 00320, respondent, in addition to asserting the above-mentioned contentions, argues that petitioners have failed to demonstrate that any transfer whatsoever occurred in 1979.
We will first consider respondent's disallowance of the portion of petitioners' claimed charitable contribution deduction which was generated by petitioners' alleged transfer of property to local congregation No. 00320. Since this amount was disallowed in full by respondent in his statutory notice of deficiency, *668 the general burden of proof rules apply with respect to this amount.
Petitioners have the burden of proving their entitlement to deductions they claim. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). In order to sustain their burden of proving that they are entitled to deductions under section 170, petitioners must establish (1) that they made a "contribution;" (2) the amount of the alleged contribution; and (3) that the contribution was made to a qualified charitable organization. See sections 501(c)(3), 262 and 170(c)(2); section 1.170A-1(a)(2), Income Tax Regs.; McGahen v. Commissioner,76 T.C. 468 (1981), affd. by unpublished order (3d Cir. Aug. 25, 1983). With respect to these alleged contributions, it is petitioners' apparent position that local congregations of FCR are integral and inseparable parts of the parent FCR. Moreover, petitioners apparently maintain that the parent FCR qualified as a valid section 501(c)(3) organisation during the years in issue and that respondent erroneously revoked its exempt status on September 30, 1982, effective for all years beginning after December 31, 1978. Petitioners would therefore have us *669 find that the parent FCR's alleged tax exempt status extended to local congregation No. 00320 and that the purported contributions of property by petitioners to local congregation No. 00320 qualified as charitable contributions under section 170(c)(2). We cannot agree with petitioners' conclusion that the parent FCR's Federal tax status is in any way determinative of the Federal tax status of the local congregations, because it is clear from this record that the local congregations were separate and distinct from the parent FCR. Although petitioners' witness testified in general terms that FCR and its local congregations were "one church," he also specifically testified that local congregations of FCR, or, more precisely, the "boards of trustees" of such local congregations, exercise complete control over expenditures of funds transferred to the local congregations. Moreover, although petitioners' witness testified that the "international treasurer" of FCR was empowered to "call in any financial statements of any congregation at any time for verification" there is no indication in this record that such authority was ever exercised or, if exercised, that any actual limits were ever *670 placed upon the local congregations by FCR with respect to expenditures of their funds. Such authority, if it existed at all, was therefore largely illusory. Finally, the articles of association of FCR specifically state that the local congregations of FCR "shall be… autonomous religious bodies" and that "[e]ach local church shall have sole control over its property real and personal…" On these facts it is clear that the local congregations of FCR were legally distinct from the parent FCR. Cf. Basic Bible Church v. Commissioner,74 T.C. 846, 856 (1980). Petitioners must therefore prove that local congregation No. 00320 independently qualified under section 170(c)(2) in order for alleged contributions to that entity to qualify as charitable contributions under section 170, and evidence of the parent FCR's alleged exempt status is immaterial to a determination of the local congregation's qualification. [6]Basic Bible Church v. Commissioner,supra at 856. *671 One of the requirements for an organization's qualification under section 170(c)(2) is that no part, however small, of the net earnings of the organization inure to the benefit of any private shareholder or individual. Section 170(c)(2)(C); Miedaner v. Commissioner,81 T.C. 272 (1983); McGahen v. Commissioner,76 T.C. at 482; Unitary Mission Church of Long Island v. Commissioner,74 T.C. 507, 513 (1980), affd. 647 F.2d 163 (2d Cir. 1981). In this case it is clear that the net earnings of local congregation No. 00320 inured to petitioners' private benefit. The record clearly establishes that petitioners retained control over the property allegedly transferred to local congregation No. 00320 at all times during 1979. This property remained where it was, in petitioners' garage, subsequent to the alleged transfer and at all times during 1979. Nor is there anything in this record that would lead us to conclude that petitioners held this property only in a fiduciary capacity subsequent to the alleged transfer. To the contrary, it is a stipulated fact in this case that petitioners derived income from the operation of *672 their sign-making business during 1979, in which the property here in issue was employed. Under these circumstances we have no difficulty in concluding that local congregation No. 00320 violated the private inurement prohibition of section 170(c)(2)(C) and therefore failed to qualify under section 170(c)(2). See Davis v. Commissioner,81 T.C. 161 (1983); McGahen v. Commissioner,supra;Church of theTransfiguring Spirit, Inc. v. Commissioner,76 T.C. 1 (1981); People of God Community v. Commissioner,75 T.C. 127 (1980); Bubbling Well Church of Universal Love, Inc. v. Commissioner,74 T.C. 531 (1980). Accordingly, petitioners' alleged contributions to such organization cannot qualify as charitable contributions under section 170. We now turn to petitioners' claimed deduction for the $3,000 petitioner transferred to FCR in 1979. Since respondent raised this issue for the first time in his answer, he bears the burden of proof with respect thereto. Rule 142(a). We find that respondent has satisfied his burden. Initially, although it is clear that petitioner actually transferred $3,000 *673 to FCR in 1979, the record clearly discloses that this transfer did not constitute a charitable contribution. The term "charitable contribution" as it is used in section 170 is largely synonymous with the term "gift." Davis v. Commissioner,supra;De Jong v. Commissioner,36 T.C. 896, 899 (1961), affd. 309 F.2d 373 (9th Cir. 1962). A gift is generally defined as a voluntary transfer of property to another without consideration. Davis v. Commissioner,supra;Seed v. Commissioner,57 T.C. 265, 275 (1971); De Jong v. Commissioner,36 T.C. at 899. "If a payment proceeds primarily from the incentive of anticipated benefit to the payor beyond the satisfaction which flows from the performance of a generous act, it is not a gift." De Jong v. Commissioner,36 T.C. at 899. See also Sutton v. Commissioner,57 T.C. 239, 242-243 (1971). Determining a taxpayer's incentive in making a transfer involves a factual inquiry which seeks to expose the true nature of a transaction. The question is essentially whether charitable benevolence prompted the transfer *674 or whether, on the other hand, the transfer was made "in expectation of the receipt of certain specific direct economic benefits within the power of the recipient to bestow directly or indirectly, which otherwise might not be forthcoming." Stubbs v. United States,428 F.2d 885, 887 (9th Cir. 1970), cert. denied 400 U.S. 1009 (1971). Applying the above principles, we think it clear that petitioner's transfer of $3,000 to FCR did not constitute a "charitable contribution." The transfer was made principally in petitioner's expectation of the receipt of specific economic benefits which would not otherwise have been available to him. More precisely, petitioners' own witness testified that a "donation" of approximately 10 percent of an individual's prior year's gross income was generally required to be made to FCR at the time the individual applied to become a minister. In return for such transfer, the applicant became an "ordained minister," secured a "charter" for a "local congregation" and was entitled to attend seminars which instructed the individual on purported methods of using his newly acquired status as "ordained minister" to, inter alia, "reduce *675 [his] tax obligation approximately 70% to 100% this year and each year thereafter." In fact, petitioner specifically testified that the primary function of these seminars was to instruct applicants on how local congregations could be utilized to minimize Federal taxes. Moreover, it is clear on this record that petitioner would not have transferred $3,000 to FCR absent the "education" which was provided by these seminars. In light of this evidence, we must conclude that petitioner's transfer of $3,000 to FCR was inspired principally by anticipated economic benefit that would not, absent the transfer, have been forthcoming. As such, the transfer was a quid pro quo and may not be claimed by petitioners as a charitable contribution deduction. Cf. Davis v. Commissioner,supra.Accordingly, we will sustain in full respondent's disallowance of petitioners' claimed charitable contribution deduction. [7]
*676 The final issue for decision is whether petitioners are liable for an addition to tax under section 6653(a). Because this issue was raised by respondent for the first time in his amended answer, respondent bears the burden of proof with respect thereto. Rule 142(a).
Section 6653(a) imposes a five percent addition to tax for an underpayment of tax if any portion of the underpayment is due to negligence or intentional disregard of rules and regulations. Respondent maintains that petitioners' claiming of charitable contribution deductions on their 1979 Federal income tax return constituted negligence or intentional disregard of rules and regulations to the extent that such deductions were attributable to "donations" allegedly made to FCR or local congregation No. 00320. Respondent has satisfied his burden. The record clearly established that the position petitioners chose to take on their return, which resulted in the major portion of the underpayment of tax, was "at best wishful thinking and at least intentional disregard of the rules and regulations." *677 Ocejo, Jr. v.Commissioner, T.C. Memo. 1983-48, 45 T.C.M. at 587, 52 P-H Memo T.C. par. 83,048, at 142. Specifically, we refer to petitioners' claimed charitable contribution deductions for items of property which were never transferred to any third party. This action clearly constitutes negligence or intentional disregard of rules and regulations. The addition to tax will be sustained. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references herein are to sections of the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all references to Rules are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. The testimony of Jerome Ernest Heinemann, and the exhibits received through such testimony, which were presented in the case of Stojalowsky v. Commissioner,↩ Docket No. 24373-81, have been incorporated in this record by stipulation of the parties.
3. On June 8, 1979, the District Director of Internal Revenue, Newark, New Jersey, sent a letter to the parent Freedom Church of Revelation located at Hohokus, New Jersey, which stated in pertinent part: Based on information supplied, and assuming your operations will be as stated in your application for exemption, we have determined that you are exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code. The tax exempt status of the parent Freedom Church of Revelation was retroactively revoked effective for all tax years beginning with the year ended December 31, 1978, by letter dated September 30, 1982, from the Acting Associate Chief of the Internal Revenue Appeals office, Mid-Atlantic Region. The parent Freedom Church of Revelation is currently challenging the Internal Revenue Service's revocation of its exempt status in the District Court of the District of Columbia, pursuant to sec. 7428(c). Freedom Church of Revelation v. United States,↩ Docket No. 82-3675 (D.D.C., filed 12/18/82).
4. In response to a question relating to the contents of these seminars, petitioner testified as follows: A. I would say, to put a number on it, maybe 55 percent of the time there was mention of the possible tax benefits.↩
5. At trial the following colloquy occurred: Q. … Did you ever make a contribution to the German-American Society, a monetary contribution? A.Oh yes; certainly. Q. Do you remember what the amount was? A. Well, I don't know if -- when they had a drive, $30, $20, $10, whatever I had in my pocket. Q. You never made a contribution to the German-American Society of $3,000, did you? * * * A. They didn't educate me either. I was just a member.↩
6. Petitioner cannot seriously contend that the exemption letter issued to the parent FCR on June 8, 1979, which was subsequently revoked by the Internal Revenue Service, constituted a group ruling applying to all local congregations of FCR. In any event it is clear that such exemption letter was not a group ruling but rather applied only to the parent FCR.↩
7. Because we find that petitioner's transfer of $3,000 to FCR did not constitute a "charitable contribution," we need not consider respondent's alternative contention that FCR, the parent organization, failed to qualify as a charitable organization within the intendment of sec. 501(c)(3)↩.